JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Benjamin Martin ("Martin"), appeals his conviction. Finding no merit, we affirm.
 {¶ 2} In a multi-count indictment, Martin was charged with two counts of aggravated robbery, violations of R.C. 2911.01, two counts of robbery, violations of R.C. 2911.02, two counts of kidnapping, violations of R.C. 2905.01, and two counts of aggravated theft, violations of R.C. 2913.02. All counts carried a one-and three-year firearm specification. Martin pled not guilty and the matter proceeded to a jury trial where the following evidence was presented.
 {¶ 3} The state offered the testimony of the two victims, Ricardo Shirley and Shon Lamar Nickens, and Martin's co-defendant, Timothy Kimbrough, as to the events of October 24, 2006, giving rise to the charges against Martin.
 {¶ 4} Shirley testified that, on this evening, he received a telephone call from his friend, Nickens, indicating that he was coming to Cleveland from Sandusky and "was looking for some marijuana." Shirley immediately left for the corner store in search of marijuana, where he encountered Martin, who he knew only as "KB" (nickname "Killer Ben"). Martin told Shirley that he could obtain marijuana, gave him his telephone number, and told him to call when his friend arrived. After Nickens arrived, Shirley called Martin and the men followed Martin to a house three to four blocks away on Crestwood Avenue. *Page 4 
 {¶ 5} Shirley and Nickens entered the house and waited in the kitchen with another young man who told them that Martin would be down from upstairs shortly. Martin, along with another man, came downstairs with guns drawn, pointed at Shirely and Nickens, and told them to "get on the floor." They complied and the men proceeded to search Shirley's and Nickens' pockets, taking $600 in cash from Shirley and personal items from Nickens, including his jacket, his jewelry, and his watch. Shirley further testified that, as the men exited the kitchen, he was kicked in the stomach and hit over the head with a gun. He testified that he was "bleeding everywhere." Once the men left, Shirley and Nickens waited a few minutes and then returned home where they called the police.
 {¶ 6} Shirley acknowledged that he did not truthfully report the entire incident to the 911 operator because he did not want the police to know that he was buying drugs. Once the police arrived on the scene, however, Shirley ultimately reported the facts surrounding his purpose for driving to the house with Martin, namely, to buy drugs. Shirley later met with Cleveland police and identified Martin in a photo array.
 {¶ 7} On cross-examination, Shirley acknowledged that, although he testified that there were three guys with guns, he reported four men as having guns when he gave a statement to the police. He further acknowledged that he did not accurately report the scenario when first calling 911. *Page 5 
 {¶ 8} Nickens corroborated Shirley's testimony. He testified that he and Shirley accompanied Martin to the house on Crestwood Avenue to buy drugs, where Martin, along with other men, pulled guns on them and ordered them on the ground in the kitchen. Nickens stated that they took his jacket, jewelry, phone, wallet, and money. He further testified that he was hit in the back of the head and told not to move when the men exited the house.
 {¶ 9} Nickens also acknowledged his prior felony convictions, which included possession of crack cocaine with intent to sell and possession of marijuana.
 {¶ 10} Co-defendant, Timothy Kimbrough, testified that, on the evening of October 24, 2006, he walked to a crack house on Crestwood to wait for a ride home. While at the house, Martin, who he has known for approximately 10 years, told him that he was bringing some people over to buy drugs. A little later, Kimbrough heard Martin, "Ouchie" (another man accompanying Martin), and the victims in the kitchen. Kimbrough entered the kitchen and gave Martin a "blunt" and then, upon Martin's request, went upstairs to look for a scale, which he could not find. Kimbrough next saw Martin and Ouchie on the stairs and then heard them enter the kitchen. Kimbrough observed Martin and Ouchie standing over the victims and pointing guns at them while they were lying on the kitchen floor. He witnessed Martin and Ouchie going through the victims' pockets and observed Ouchie hit one of the victims in the head with his gun. *Page 6 
 {¶ 11} Kimbrough further testified that he was not promised any deal by the state in exchange for his testimony. According to him, he was simply at the wrong place at the wrong time and was unaware of Martin's intentions. He stated that he wanted to testify to tell the truth. He acknowledged that he was a co-defendant in the instant case as well as facing two other pending felony cases.
 {¶ 12} Cleveland police detective John Vinson testified that he investigated the incident of October 24. He stated that Shirley named both Martin and Ouchie as participants in the case and later identified Martin and Kimbrough in a photo array. Det. Vinson further testified that he went to the Crestwood house a couple of months after the incident and observed that the house was completely trashed. He also testified as to the written statement he took from Kimbrough, wherein Kimbrough acknowledged being at the house on the night of the robbery and stated that Martin and Ouchie robbed the victims.
 {¶ 13} Cleveland police officer Ray Kaloczi testified that he responded to the call of a robbery on the evening of October 24, 2006. He testified that, although not initially truthful, the victims finally acknowledged that they went to the Crestwood house to buy drugs. Officer Kaloczi attempted to locate the house and the suspects but was unable to. He further testified that he observed a laceration on Shirley's head and that Shirley was advised to receive medical treatment. *Page 7 
 {¶ 14} After the state rested, the defense re-called Officer Kaloczi to the stand. Officer Kaloczi testified that the victims first told him that they had been car-jacked when questioned as to the alleged robbery. He indicated that he did not find their story to be credible and that after the story changed three to five times, the victims finally told what he believed to be the true story. They confessed that they were at the house to buy drugs.
 {¶ 15} The jury found Martin guilty on all counts. The trial court merged all the counts into the two counts of aggravated robbery and sentenced Martin to six years in prison.
 {¶ 16} Martin appeals, raising the following two assignments of error:
 {¶ 17} "[I.] There was insufficient evidence to support the guilty verdicts for, and appellant's conviction was against the manifest weight of the evidence.
 {¶ 18} "[II.] The trial court erred when it failed to grant defense counsel's motion for a mistrial based on the state eliciting evidence that was not provided in discovery."
 Manifest Weight of the Evidence {¶ 19} In his first assignment of error, Martin seems to challenge his conviction on both sufficiency and manifest weight of the evidence grounds. Yet, he fails to identify a single element that the state failed to prove or even argue the same. Instead, the crux of his argument is that the state's evidence was not credible, reliable, or consistent. Because this argument relates solely to a *Page 8 
manifest weight of the evidence, we will treat it accordingly. See App. R. 16(A)(7) and 12(A)(2); see, also State v. Powell, 7th Dist. No. 05MA50, 2006-Ohio-3075 (court will not consider a general claim when party fails to raise any argument to support the alleged error).
 {¶ 20} In reviewing a claim that a conviction is against the manifest weight of the evidence, the Ohio Supreme Court in State v.Thompkins (1997), 78 Ohio St.3d 380, 387, explained the appropriate standard of review as follows:
 {¶ 21} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. *** Weight of the evidence concerns `the inclination of thegreater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. *** Weight is not a question of mathematics, but depends on its effect in inducing belief' (Emphasis added.)
 {¶ 22} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. *** `The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must *Page 9 
be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" (Internal citations omitted.)
 {¶ 23} After reviewing the entire record, weighing the evidence and all reasonable inferences, considering the credibility of witnesses, and conflicts in the evidence, we do not find that Martin's convictions were such that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." See Thompkins, supra.
 {¶ 24} Here, the state presented testimony from both victims and a co-defendant, all of whom testified that Martin took money, jewelry, and other personal possessions from the victims while restraining them at gunpoint and preventing them from leaving. To the extent that the witnesses had some inconsistencies in their testimony, we cannot say that the jury clearly lost its way in resolving these inconsistencies. Martin complains that co-defendant Kimbrough's statement to the police differed from what he testified to at trial. We, however, fail to see any major inconsistencies in his statement. Instead, Kimbrough simply gave more details at trial as opposed to what he provided in his written statement; none of which materially altered what he told the police. Kimbrough consistently stated that Martin drew a gun on the victims and took their money and personal possessions.
 {¶ 25} As for Martin's claim that none of the eyewitnesses was credible *Page 10 
because of their history with drugs, this argument lacks merit. The jury was aware of their prior convictions as well as the victims' reason for meeting with Martin. Martin's argument regarding credibility does not warrant reversal of his conviction. Indeed, determining the credibility of the witnesses is primarily up to the fact finder. State v.DeHass (1967), 10 Ohio St.2d 230, 231; see, also, State v. Jenks (1991),61 Ohio St.3d 259. Further, as for Martin's claim that Kimbrough's testimony was not credible because of his being a co-defendant in the case, the jury was specifically provided an instruction on the credibility of an accomplice's testimony and was in the best position to attribute the appropriate weight to his testimony. See State v.Bruno, 8th Dist. No. 84883, 2005-Ohio-1862.
 {¶ 26} Accordingly, we overrule the first assignment of error.
 Motion for a New Trial {¶ 27} In his second assignment of error, Martin argues that the trial court erred in failing to grant a new trial under Crim. R. 16 as a result of the state withholding discovery. He specifically complains that prior to examining Det. Vinson on the stand, the state learned that Det. Vinson had investigated the house where the alleged incident occurred and had observed the interior of the house. Det. Vinson testified that he visited the house and observed what "appeared to be red splashes on the floor." The state allegedly never shared this *Page 11 
information with the defendant, which he contends constituted a flagrant discovery violation warranting a mistrial. We disagree.
 {¶ 28} We find no discovery violation by the prosecutor that would warrant the granting of a mistrial. Here, Det. Vinson's visit or observations at the home did not constitute exculpatory evidence subject to disclosure under Crim. R. 16. Nor does Martin point to any other enumerated grounds under Crim. R. 16 that evidences a discovery violation. As for the state's failure to share Det. Vinson's anticipated testimony regarding his visit to the house, we find no obligation under Crim. R. 16. Thus, because Martin failed to demonstrate a willful discovery violation by the prosecutor, the trial court did not abuse its discretion in denying his motion for a mistrial. See, generally,State v. Robinson, 8th Dist. No. 90731, 2008-Ohio-5580; State v.Bozsik, 9th Dist. No. 3091-M, 2001-Ohio-7011, discretionary appeal not allowed, 95 Ohio St.3d 1437, 2002-Ohio-2084; State v. Thomas (Feb. 17, 1999), 9th Dist. No. 18881.
 {¶ 29} Accordingly, the second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case *Page 12 
remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 KENNETH A. ROCCO, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR. *Page 1